UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUSTIN DECKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Cause No. 1:10-cv-1526-WTL-DKL |
| | ) IP 07-cr-12-T/F-14 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, DENYING REQUEST FOR EVIDENTIARY HEARING, AND DENYING CERTIFICATE OF APPEALABILITY**

This cause is before the Court on Petitioner Dustin Decker's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (dkt. no. 1). The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court further **DENIES** Decker's request for an evidentiary hearing and finds that a certificate of appealability should not issue.

### I.   REQUEST FOR EVIDENTIARY HEARING

Because the motion, files, and records related to this case conclusively show that Decker is not entitled to relief, the Court **DENIES** Decker's request for an evidentiary hearing. *See Bruce v. United States*, 476 F.3d 592, 597 (7th Cir. 2001).

### II.   BACKGROUND

On June 20, 2007, a grand jury sitting in the Southern District of Indiana returned a four-count second superseding indictment charging twenty-one individuals, including Decker, with a variety of crimes related to a widespread methamphetamine ring that stretched from Chicago to

Indianapolis. *United States v. Garcia*, 580 F.3d 528, 531 (7th Cir. 2009). Decker ultimately pled guilty to conspiracy to distribute, and possession with intent to distribute, in excess of 500 grams of a mixture or substance containing a detectible amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1]

On August 31, 2007, during Decker's change of plea hearing, "a federal agent testified that authorities recovered two sizeable stashes of methamphetamine from Decker's home. The agent also stated that from approximately October 1, 2006, through January 22, 2007, Decker received weekly deliveries of around five pounds of methamphetamine, which he intended to resell for profit."[2] *Id*. at 540. Decker maintained that he received only seven to eight pounds of methamphetamine during the entire conspiracy, but otherwise agreed with the factual basis for his plea. *Id*. at 540-41.

Thereafter, pursuant to Federal Rule of Criminal Procedure 32(c), a probation officer prepared a presentence investigation report ("PSR"). The probation officer "dismissed Decker's claim that he had only distributed seven to eight pounds of methamphetamine and fixed his base offense level at thirty-eight." *Id*. at 541. In other words, the probation officer concluded that Decker was responsible for at least fifteen kilograms of methamphetamine. PSR at ¶ 48.

Decker was sentenced on December 7, 2007. "At the sentencing hearing, the district court adopted the PSR's suggested base offense level of thirty-eight." *Garcia*, 580 F.3d at 541.

> Decker's counsel did not object to the recommended drug quantity. The only argument Decker presented was that he should receive a reduction for his minor role in the conspiracy. In making this argument to the court, Decker's counsel stated: "We aren't arguing – and we understand well the law in the area with regard to conspiracies and that is that he could be tied to the total amount of the

---

[1] Decker pled guilty without a plea agreement with the Government.

[2] Authorities recovered approximately three pounds of methamphetamine from Decker's home.

> conspiracy. That's not our argument. Actually, we're using that as part of our argument as a minor participant."

*Id*. The court also imposed a two-level enhancement for possession of a firearm, but granted a three-level reduction for Decker's acceptance of responsibility. Decker's final offense level was thirty-seven and his criminal history was set at category II. Under the Sentencing Guidelines, Decker faced between 235 to 293 months in prison. The court ultimately sentenced Decker to 235 months in prison.

Decker appealed his sentence to the Seventh Circuit and argued that "the district court miscalculated his base offense level by holding him responsible for too much methamphetamine." *Id*. In short, Decker argued that he was responsible for only seven pounds of methamphetamine—not fifteen kilograms. The Seventh Circuit concluded, however, that Decker "waived his objection to the court's drug quantity calculation," *id*. at 542, because counsel made the strategic decision to focus on Decker's minor role in the conspiracy, rather than to challenge the drug quantity calculation. As a result, Decker's sentence was affirmed.

Decker filed the present motion for relief pursuant to 28 U.S.C. § 2255 on November 24, 2011.

### III.   STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief pursuant to § 2255 if a sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose . . . , or that . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow and limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental

defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## IV. DISCUSSION

Decker now argues that he received ineffective assistance of counsel during the sentencing phase of his criminal case. As a preliminary matter, "a district court cannot reach the merits of an appealable issue in a § 2255 proceeding unless that issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). However, claims of ineffective assistance of counsel need not be raised on direct appeal and constitute an exception to the general rule of procedural default. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Therefore, Decker need not have raised the issue of ineffective assistance of counsel prior to the instant motion.

With that said, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009) (quotations and citations omitted). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With regard to an attorney's performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness' . . . [i.e.,] 'reasonableness under prevailing professional norms.'" *Id*. (quoting *Strickland*, 466 U.S. at 687). With respect to the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

According to Decker, counsel was ineffective for the following reasons:

1. Counsel was ineffective for failing to properly object to the insufficient information contained in the PSR that enabled the district court to make a finding as to the quantities involved based solely on the conclusory nature of the PSR.

2. Counsel was ineffective for failing to argue that the district court erred in attributing fifteen kilograms or more of methamphetamine to Decker, when Decker admitted to only seven pounds of methamphetamine, thus violating the Sixth Amendment and *Cunningham v. California*.

3. Counsel was ineffective for failing to object to the two-point enhancement under Sentencing Guideline § 2D1.1(b)(1), which was erroneously applied in light of *Cunningham v. California* (and *Booker* and *Apprendi*) and in violation of the Sixth Amendment.

4. Counsel was ineffective for failing to object to Decker's criminal history in violation of Sentencing Guideline § 4A1.2(c)(1).

5. Counsel was ineffective for failing to properly challenge the factual information regarding the drug quantity contained in the PSR under *Booker* and *Apprendi*.

Decker's Mot. at 2-4.[3] Each argument is addressed below.

## A. Drug Quantity

Decker's first, second, and fifth arguments relate to the amount of drugs attributed to him by the court for sentencing purposes. Decker continues to maintain that he is responsible for only seven pounds of methamphetamine, not fifteen kilograms as the trial court determined. As noted above, Decker's direct appeal to the Seventh Circuit focused on this argument. The Seventh Circuit concluded, however, that counsel made the strategic decision to focus on Decker's minor role in the conspiracy and forego an objection to the amount of drugs. *Garcia*, 580 F.3d at 542.

---

[3] Decker filed two separate documents entitled "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." For ease of reference, Decker's first filing (dkt. no. 1) shall hereafter be referred to as "Decker's Motion." Decker's second filing (dkt. no. 2) shall hereafter be referred to as "Decker's Brief."

As a result, Decker "waived his challenge to the district court's drug quantity calculation."[4] *Id*. Decker now argues that counsel's failure to challenge the court's calculation and the information contained in the PSR rendered his performance constitutionally ineffective.

Case law is clear that

[t]he base offense level for participation in a conspiracy to distribute methamphetamine depends on the quantity of the drug involved in the crime. In calculating a defendant's base offense level under the Guidelines, the sentencing court must consider types and quantities of drugs that were part of the same course of conduct or common scheme or plan. The defendant need not have been either charged with or convicted of carrying out these other acts. This relevant conduct or aggregation rule provides the government tremendous leverage in drug cases. The government's burden at sentencing is further eased by the fact that the Federal Rules of Evidence do not apply, and the court is thus free to consider a wide range of information, including hearsay evidence, that may have been inadmissible at the defendant's trial.

*United States v. McEntire*, 153 F.3d 424, 435-36 (7th Cir. 1998) (quotations and citations omitted). The Government must simply "prove a defendant's additional conduct by *reliable evidence*." *Id*. at 436 (emphasis in original).

Here, the Court determined that Decker was responsible for at least fifteen kilograms of methamphetamine and set his base offense level at thirty-eight. Sentencing Tr. at 11. The Court relied on the evidence contained in the PSR in making its determination. Decker argues, however, that the PSR contained insufficient "conclusions" of "undisclosed law enforcement officials," and was thus, unreliable. Decker's Br. at 4-5 (citing *Soto-Piedra*, 525 F.3d at 531) (vacating sentence where evidence was insufficient for court to find defendant responsible for 14

---

[4]Decker spends a portion of his brief arguing that his challenge to drug quantity calculation was "forfeited" rather than "waived." Decker's Br. at 7. Resolution of this argument, however, is not necessary to the Court's analysis of whether counsel provided ineffective assistance, and thus, need not be addressed by the Court. Furthermore, to the extent Decker argues that he did not waive the objection, the Seventh Circuit has already determined that he did. *Garcia*, 580 F.3d at 542. Thus, the Court declines to exercise its discretion to reconsider the matter. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (noting that the court may exercise its discretion not to reconsider issues already decided on direct appeal).

to 15 kilograms of crack). Decker argues that counsel should have objected to the drug quantity calculation on these grounds. Decker, however, fails to show that counsel's performance was ineffective in this regard.

      The PSR summarized the conspiracy as follows:

> [The i]nvestigation into the instant offense began in November 2006 and revealed the existence of a methamphetamine trafficking organization operating in the Indianapolis area from approximately October 1, 2006, though January 22, 2007. During this time frame, the organization distributed approximately ten pounds of methamphetamine per week. The investigation identified Jorge Baltista . . . and Eden Soto as the managers of the organization. Baltista obtained his methamphetamine from Luis Javier Villa-Alvarado, also known as "Lupillo," in Whiting, Indiana. Lupillo obtained his supply of methamphetamine from an unknown source in Chicago, Illinois. Baltista's primary distributor was Soto. Soto received approximately ten pounds of methamphetamine per week from Baltista and then delivered approximately five pounds of methamphetamine per week to Christian Mendez, who redistributed this methamphetamine to Dustin Decker (this information is according to DEA and is consistent with information learned through wire surveillance).

PSR at ¶ 14. Although the PSR did not identify any particular DEA agent with knowledge of these facts, DEA Agent Michael Cline, the lead investigator in the case, testified regarding the wiretaps, drug quantities, and coconspirators at Decker's change of plea hearing. Change of Plea Tr. at 26.

      Counsel's failure to object to the foregoing evidence and Agent Cline's testimony did not render his performance ineffective. Agent Cline's testimony was reliable and there is no evidence, other than Decker's own testimony, that he received only seven pounds of methamphetamine. More importantly, as the Seventh Circuit noted in Decker's direct appeal, "[t]here may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forego another." *Garcia*, 580 F.3d at 542 (quoting *United States v. Kindle*, 453 F.3d 438, 442 (7th Cir. 2006)). Thus, it was not objectively

7

unreasonable for counsel to focus on Decker's minor role in the conspiracy rather than the drug quantity calculation.

Decker further argues that counsel should have objected to the drug quantity calculation because it contradicted his admission of only seven pounds. Because of the contradiction, Decker argues that a jury was required to make the finding. Decker cites to *Cunningham v. California*, 549 U.S. 270 (2007), *United States v. Booker*, 543 U.S. 220 (2005), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to support his argument.[5] Decker's reliance on these cases is misplaced.

In *United States v. Seymour*, several defendants, relying on *Apprendi* and *Cunningham*, argued "that their Sixth Amendment rights were violated when the district court judge, and not the jury, determined that 1.5 kilograms of crack were attributable to each defendant." 519 F.3d 700, 709 (7th Cir. 2008). The Seventh Circuit clarified, however, that "*Apprendi* held that a jury must find beyond a reasonable doubt 'any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed *statutory maximum*.'" *Id*. (citing *Apprendi*, 530 U.S. at 490) (emphasis added).

The defendants in *Seymour* were convicted of possession with the intent to distribute fifty or more grams of cocaine base. The statutory maximum for the crime was life imprisonment. "The district court's determination that each defendant was responsible for 1.5 kilograms or more of crack involved in the conspiracy placed the Defendants into the base offense level of thirty-eight, which [also] has a maximum sentence of life imprisonment." *Id*. at 710. In denying the defendants' request for relief, the Seventh Circuit explained that "[t]he district court judge's determinations regarding the drug quantity attributable to each defendant did not increase the

---

[5]"*Cunningham* . . . expanded the language of *Apprendi* and established that 'any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt." *United States v. Seymour*, 519 F.3d 700, 709 (7th Cir. 2008) (quoting *Cunningham*, 549 U.S. at 281).

8

penalty for the crime beyond the statutory maximum . . . of life imprisonment; thus, no additional facts were found that affected the Defendants' potential maximum sentences." *Id*. The court further stated that "[o]nce the drug quantity and type for the conspiracy as a whole are determined . . . , the judge may lawfully determine the drug quantity attributable to each defendant and sentence him accordingly so long as that determination does not exceed the statutory maximum sentence." *Id*.

Here, Decker pled guilty to conspiracy to distribute, and possession with intent to distribute, in excess of 500 grams of a mixture or substance containing a detectible amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The statutory maximum for both crimes is life in prison. 21 U.S.C. § 841(b)(1)(A)(viii). The court determined that Decker was responsible for fifteen kilograms of methamphetamine and assigned him a base offense level of thirty-eight—which also has a maximum sentence of life imprisonment. Accordingly, there was no "*Apprendi* issue" and counsel's failure to object to the drug quantity on *Apprendi* grounds did not render his performance ineffective.

There was also no "*Booker* issue" in this matter. In *Booker*, the Supreme Court determined that the mandatory application of the Sentencing Guidelines in the federal system violated the Sixth Amendment. 543 U.S. at 259-60. Since *Booker*, the Sentencing Guidelines have been advisory in nature. *See Kimbrough v. United States*, 552 U.S. 85, 89 (2007). In this case, the court acknowledged the advisory nature of the guidelines before Decker was sentenced. Sentencing Tr. at 11. Thus, there was no Booker issue about which counsel should have objected and therefore, counsel was not ineffective for failing to object on that basis.

Based on the foregoing, Decker has failed to show that counsel's treatment of the drug quantity calculation was constitutionally ineffective.

9

### B. Weapon Enhancement

Decker's second argument focuses on his counsel's failure to object to the two-point weapon enhancement allowed under § 2D1.1(b)(1) of the Sentencing Guidelines. Decker does not dispute (and did not dispute at sentencing) the factual basis for the enhancement. Rather, Decker maintains that the two-point enhancement violated his "rights under the Sixth Amendment because a jury did not make this finding in light of *Cunningham v. California*." Decker's Br. at 15. As a result, counsel should have objected to the enhancement on these grounds. Decker again focuses on *Apprendi* and *Booker* and argues that the court is not permitted to enhance a sentence using facts not found by a jury or admitted by a defendant. As discussed above, however, Decker's reliance on these cases is misplaced.

To be clear, the two-point firearm enhancement did not increase Decker's potential sentence above the statutory maximum for conspiracy to distribute, and possession with intent to distribute, in excess of 500 grams methamphetamine, because the statutory maximum and the maximum under the guidelines was life in prison. Thus, there was no *Apprendi* issue with regard to the application of the weapon enhancement and counsel was not ineffective for failing to object to the enhancement on *Apprendi* grounds. As noted above, there was also no *Booker* issue and counsel was also not ineffective for failing to object to the weapon enhancement on *Booker* grounds.

### C. Criminal History Category

Decker argues that counsel failed to object to Decker's criminal history rating on the grounds that he was "erroneously attributed 1 point under 4A1.2(c)(1)" of the Sentencing

Guidelines.[6] Decker's Br. at 22. Decker argues that his prior conviction for battery, a Class B misdemeanor, should have been treated as a disorderly conduct conviction under the Sentencing Guidelines, and thus, should not have been calculated in his criminal history rating.

Although Decker maintains that the factual basis for the crime "amounted to the definition for disorderly conduct," and that he received probation "well under a year," Decker's Br. at 20; 21, the underlying facts of the conviction clearly show that he physically assaulted another person, and thus, committed a battery. *See* Ind. C. § 35-42-2-1(a) ("A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor."). Decker explains that he was stopped by security officers at an Indianapolis mall after he yelled at and grabbed a female companion. While waiting for the police to arrive, Decker "slammed his left shoulder into [a] security officer's chest causing him pain."[7] Decker's Br. at 19. These facts show that Decker knowingly or intentionally touched the officer in a rude, insolent, or angry manner. Based on this fact, counsel was not ineffective for failing to object to Decker's criminal history category on these grounds.

## V.  CONCLUSION

For the foregoing reasons, Decker's motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by a person in federal custody is **DENIED**.

## VI.  CERTIFICATE OF APPEALABILITY

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Decker has failed

---

[6] Section 4A1.2(c)(1) states that "[s]entences for [disorderly conduct] . . . are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense."

[7] Decker does not dispute that he physically assaulted the security officer. Decker simply argues that the facts of the crime are more akin to disorderly conduct.

11

to show that (1) reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

SO ORDERED: 05/07/2013

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Dustin Decker**
**08453-028**
**Greenville Federal Correctional Institution**
**Inmate Mail/Parcels**
**P.O. Box 5000**
**Greenville, IL 62246**

Copies to all counsel of record via electronic communication.